# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| **INGRAM HOSTING HOLDINGS LLC,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) Case No. _____ |
| **CHEGG, INC.,** | ) ) ) |
| **Defendant.** | ) ) |

## COMPLAINT

For its Complaint against Defendant Chegg, Inc. ("Chegg"), Plaintiff Ingram Hosting Holdings LLC ("IHH"), states as follows:

1. Plaintiff IHH, formerly known as Ingram Hosting Holdings, Inc., is wholly owned by Ingram Industries Inc., a corporation organized and existing under the laws of the state of Tennessee, with its principal place of business in Tennessee.

2. Defendant Chegg is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in California.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because it involves claims between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

5. The Court has personal jurisdiction over Chegg pursuant to Tenn. Code Ann. § 20-2-214, because Chegg's conduct described herein constitutes transacting business within the State of Tennessee. This includes, without limitation, entering into contracts with IHH and its affiliate, Ingram Book Group, LLC ("IBG"), entities based in Tennessee, for services to be rendered and materials to be furnished in Tennessee.

02545840 3

6. IHH is in the business of owning and consigning to Chegg new and used academic textbooks.

7. Chegg is in the business of selling and renting new and used academic textbooks.

8. Beginning in 2014, IHH and IBG entered into a business relationship with Chegg pursuant to which IHH purchased textbook inventory from Chegg, which IHH then consigned to Chegg for sale or rental to students and other consumers. IBG handled the warehousing and distribution of the textbooks.

9. IHH, IBG and Chegg entered into a series of contracts and amendments governing their relationship, including the following (collectively, "Agreements"):

   a. Inventory Purchase and Consignment Agreement between IHH and Chegg dated May 21, 2014 ("2014 Agreement");

   b. Logistics & Warehouse Agreement between IBG and Chegg dated October 1, 2014 ("Logistics Agreement");

   c. Supplemental Inventory Purchase and Consignment Agreement between IHH and Chegg dated December 5, 2014, ("Supplemental #1");

   d. 2015 Inventory Purchase and Consignment Agreement (and with respect to Section 4 the Amendment to Logistics and Warehouse Agreement) between IHH, IBG, and Chegg dated April 3, 2015 ("2015 Agreement");

   e. Amendment No. 1 between IHH, IBG, and Chegg dated January 2016 ("January 2016 Amendment");

   f. Supplemental #2 to Inventory Purchase and Consignment Agreement between IHH and Chegg dated July 21, 2016 ("Supplemental #2");

   g. First Supplement to the 2015 Inventory Purchase and Consignment Agreement between IHH and Chegg dated December 29, 2016 ("First Supplement to 2015 Agreement");

   h. Amendment to the 2015 Inventory Purchase and Consignment Agreement between IHH, IBG, and Chegg dated January 1, 2018 ("Amendment to 2015 Agreement"); and

   i. Inventory Purchase and Wind Down Agreement between IHH, IBG, and Chegg dated December 2, 2019 ("Wind Down Agreement").

10. Copies of the Agreements are in Chegg's possession.

11. IHH is entitled under the Agreements to a percentage of the "Net Revenue" received by Chegg from its sale and rental of textbooks.

12. "Net Revenue" is defined in Section 6 of the Confidential Appendix to the 2015 Agreement as follows:

> For purposes of this Agreement, "Net Revenue" means the gross revenue actually collected by Chegg from the Consumer with respect to a Qualifying Transaction pursuant to the Rental Agreement less (i) any sales tax collected and owed to a taxing authority related to the Consumer Order, or subsequent transactions (e.g. BNR), whether or not separately stated on the Consumer Order and (ii) Consumer returns.

13. Upon review of information in connection with the claims resolution process called for in the Wind Down Agreement, IHH discovered that Chegg had made millions of dollars of improper deductions from the Net Revenue payments made to IHH under the Agreements.

14. For example, and without limitation, Chegg deducted from Net Revenue refunds it issued to students or consumers for: (i) rental and/or freight fees related to rental transactions; (ii) sales price and/or freight fees for sale transactions; (iii) refunds of forced buyouts following non-return of a book; and (iv) late fees.

15. None of these deductions were for sales tax or "Consumer returns," which are the only deductions allowed from the Net Revenue calculation under the Agreements.

16. Based on these improper deductions, Chegg has withheld more than $7 million in Net Revenue payments from IHH.

17. IHH has attempted to resolve this dispute short of litigation, but Chegg has largely refused to engage in any meaningful discussion concerning the deductions.

18. Instead, Chegg has focused mainly on claims it purports to have against IHH and IBG under the Agreements, although, in most instances, Chegg has refused to provide sufficient

explanation and supporting documentation to allow IHH and IBG to evaluate the merits of those claims.

19. Nevertheless, Chegg has decided, unilaterally and without any right to do so under the Agreements or otherwise, to net out the amount of its alleged claims, nearly $10 million, from the payment that Chegg is due to make to IHH under the Agreements for February 2020.

## COUNT I – BREACH OF CONTRACT

20. IHH incorporates the preceding paragraphs herein by reference.

21. The Agreements are valid and enforceable contracts.

22. IHH has fully performed all of its obligations under the Agreements.

23. Chegg has materially breached its obligations under the Agreements as described above.

24. IHH has been damaged as a direct and proximate result of Chegg's breaches of the Agreements in an amount to be proven at trial, but not less than $17 million.

## PRAYER FOR RELIEF

Accordingly, IHH requests that the Court award it:

1. A money judgment against Chegg in an amount to be proven at trial;

2. Prejudgment interest;

3. Reasonable attorneys' fees and costs incurred in this action, to the extent permitted by law; and

4. Such other relief, specific or general, as the Court deems just and equitable.

Respectfully submitted,

/s/W. Scott Sims

02545840 3                                    4

Case 3:20-cv-00186   Document 1   Filed 03/03/20   Page 4 of 5 PageID #: 4

W. Scott Sims (#17563)
R. Mark Donnell, Jr. (#30136)
S<small>IMS</small>|F<small>UNK</small>, PLC
3322 West End Ave, Suite 200
Nashville, TN 37203
(615) 292-9335
(615) 649-8565 (fax)
ssims@simsfunk.com
mdonnell@simsfunk.com

*Attorneys for Plaintiff*